HERBSMAN HAFER WEBER & FRISCH, LLP
Dorothy M. Weber (DMW-4734)
494 Eighth Avenue, Suite 600
New York, NY 10001
(212) 245-4580
dorothy@musiclaw.com
*Attorneys for Plaintiffs Experience Hendrix L.L.C.*
*Authentic Hendrix LLC and Sony Music Entertainment*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

EXPERIENCE HENDRIX, L.L.C., a
Washington Limited Liability Company, and
AUTHENTIC HENDRIX, LLC, a Washington Limited
Liability Company and SONY MUSIC
ENTERTAINMENT, a Delaware Partnership,

            Plaintiffs,

   -against-

NOEL REDDING ESTATE LTD and MITCH
MITCHELL ESTATE LTD,

            Defendants.
------------------------------------------------------------------x

Case No.: 22-cv-443

**COMPLAINT**

Plaintiffs Experience Hendrix L.L.C., Authentic Hendrix, LLC and Sony Music Entertainment ("SME") (collectively, "Plaintiffs"), by their attorneys, Herbsman Hafer Weber & Frisch, LLP, for their Complaint herein against Noel Redding Estate Ltd and Mitch Mitchell Estate Ltd (collectively, "Defendants"), allege as follows:

**NATURE OF ACTION**

1. Jimi Hendrix ("Jimi" or "Hendrix") died fifty-one (51) years ago on September 18, 1970, at the age of 27, as a resident of the State of New York. A protracted administration

proceeding ensued in the Surrogates Court of the State of New York County of New York, *Estate of James M. Hendrix a/k/a Jimi Hendrix*, file 5670-1970.

2. During those estate proceedings, Jimi's former band members, (David) Noel Redding ("Redding") and John Graham "Mitch" Mitchell ("Mitchell") (the three of them together performing as The Jimi Hendrix Experience), both appeared in New York in connection with claims against Jimi's estate – including, specifically, in connection with the Jimi Hendrix Experience recordings - which claims were settled, in full, in exchange for significant monetary consideration which they were paid and they accepted.

3. They each executed broad general releases, and covenants not to sue, in favor of the Estate of Jimi Hendrix.

4. Both of the general releases were witnessed, approved and also executed by those individuals' respective New York attorneys. The settlements were paid from New York.

5. The Estate of Jimi Hendrix, and its successors in interest, Plaintiffs Experience Hendrix L.L.C. and Authentic Hendrix, LLC (the "Hendrix Companies") own the Jimi Hendrix Experience recordings (the "Recordings") and all copyrights and attendant intellectual property rights therein.

6. The Hendrix Companies have openly, continuously and exclusively exploited the music and recordings of the Jimi Hendrix Experience (including the Recordings) throughout the United States and worldwide since the general releases were signed.

7. For almost half a century there has never been any claim by Defendants or their successors in interest and/or assigns concerning the copyright ownership, exploitation of these recordings by Plaintiffs, or payments of royalties or otherwise in connection with that exploitation.

8. Redding died in 2003. Upon information and belief, Redding's estate was probated.

9. Mitchell died in 2008. Upon information and belief, Mitchell's estate was probated.

10. SME is Plaintiffs' worldwide exclusive licensee. In December of 2021, a cease and desist letter was sent on behalf of Defendants[1] to Plaintiff SME's sublicensee in the United Kingdom, which Claim Letter asserted, *inter alia*, claims of infringement of copyright. Defendants threatened imminent litigation if their demands were not met.

11. This is an action for declaratory judgment concerning the validity of two (2) general releases with covenants not to sue, executed in connection with New York actions, and declaring non-infringement of copyright and other intellectual property rights, including performers' rights, asserted by Defendants.

12. This action is ripe for adjudication as the facts alleged show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The claim letter sent to the Hendrix Companies' Plaintiffs' exclusive licensee's sublicensee in the United Kingdom clearly and unambiguously threatens immediate litigation.

13. The core issue for determination by this Court involves the interpretation of New York contracts, which contracts were the settlements for claims brought by Defendants' predecessors in interest in New York. Interpretation of those agreements will fully determine

---

[1] Defendant Noel Redding Estate Ltd and Mitch Mitchell Estate Ltd are the two entities identified in the Claim Letter to be successors in interest and/or assigns of Redding's and Mitchell's respective Estates.

3

the rights of the parties under the contracts or any payment issue, whether under New York or foreign law.

14.     To the extent that there may be additional issues which implicate foreign law, it is beyond cavil that United States federal courts have the authority to resolve disputes which require the application of foreign substantive law including but not limited to United Kingdom copyright law. This Court can conclusively rule on and affirm the rights, duties and obligations of the parties.

## JURISDICTION AND VENUE

15.     This is an action for, *inter alia*, declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Pursuant to 28 U.S.C. § 1332 this Court has subject matter jurisdiction based on diversity since Plaintiffs are citizens of a State and Defendants are citizens or subjects of a foreign state, and the amount in controversy exceeds seventy-five-thousand dollars ($75,000.00). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because Defendants, through their actions and statements, described below, have expressed intention to commence litigation against Plaintiffs for, *inter alia*, alleged copyright infringement, and Plaintiffs seek a declaratory judgment with respect thereto, meaning there is a controversy over the parties' rights and obligations under the Copyright Act, 17 U.S.C. §§ 101 *et seq*.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 since a substantial part of the events giving rise to the claim occurred in this district.

17.     Pursuant to Fed. R. Civ. P. 44.1, Plaintiffs intend to rely upon the laws of the United Kingdom during these proceedings, including, but not limited to, the Copyright Act

1956, the Copyright, Designs and Patent Act 1988, and the Copyright and Related Rights Regulations 1996 SI 2967.

## PARTIES

18.     Plaintiff Experience Hendrix, L.L.C. ("Experience") is a limited liability company established under the laws of the State of Washington. Plaintiff Experience is the assignee of and sole owner of the copyrights and trademark rights owned by the late Jimi Hendrix and is the proprietor of the intellectual property rights in and to the vast catalog of musical compositions and sound recordings created by the late Jimi Hendrix.

19.     Plaintiff Authentic Hendrix, LLC ("Authentic") is a limited liability company established under the laws of the State of Washington. Plaintiff Authentic is the worldwide licensing arm of Experience.

20.     Plaintiff SME is a Delaware general partnership with its principal place of business at 25 Madison Avenue, New York, New York. SME is the Hendrix Companies' exclusive worldwide licensee. SME's sublicensee in the United Kingdom is a distributor.

21.     Defendant Noel Redding Estate Ltd ("NRE") is, upon information and belief, a limited liability company incorporated and registered in England and Wales with company number 06434124 whose registered office is at 77 Wilkins Road, Oxford, Oxfordshire, OX4 2JB, United Kingdom. NRE has been "legally, beneficially and absolutely" assigned "all the assets … with full title guarantee … all intellectual property rights [including copyright interests]" which, if any, existed in the estate of (David) Noel Redding.

22.     Defendant Mitch Mitchell Estate Ltd ("MME") is, upon information and belief, a limited liability incorporated and registered in England and Wales with company number 13138694 whose registered office is at The Brownlow, Horton Road, Ivinghoe,

Leighton Buzzard, LU7 9DY, United Kingdom. MME has been "absolutely" assigned with "full title guarantee all the copyright interests" which, if any, existed in the estate of John Graham Mitchell (being Mitchell's legal name).

23. On December 8, 2021 the SME's sublicensee received a demand letter from Keystone Law (Defendants' UK attorneys) threatening litigation, a copy, with attachments included, are attached hereto as Exhibits A through F.[2]

## I. BACKGROUND FACTS

### The Legacy of Jimi Hendrix

24. Widely recognized as one of the most creative and influential musicians of the 20th century, Jimi Hendrix pioneered the explosive possibilities of the electric guitar. Hendrix's innovative style created a new musical form. His recordings have remained among the most popular rock albums of all time, featuring tracks like "Purple Haze," "The Wind Cries Mary," "Foxey Lady," "Fire" and "Are You Experienced?" In 1968, Hendrix recorded one of his seminal works, "Voodoo Child Slight Return."

25. Jimi's performance of the song at Woodstock in 1969 is one of the most iconic of any performances in music history. Jimi's meteoric rise in the music industry took place in just four short years, prior to his tragic death at the age of 27.

26. Jimi generated an astounding collection of musical compositions and recordings over the course of his short career. His music embraced the influences of blues, ballads, rock, R&B, and jazz and his legacy continues to influence a host of modern musicians.

---

[2] To the extent other unknown parties are involved and not disclosed, Plaintiffs reserve the right to add such additional parties as Defendants.

27.     Decades after his death, Jimi is consistently regarded as one of the greatest guitarists of all time.[3]

### Jimi's Early Years: September 1961 – 1966

28.     In 1961, Jimi (then "Jimmy") left home to enlist in the United States Army and in November 1962 earned the right to wear the "Screaming Eagles" patch for the paratroop division. While stationed at Fort Campbell, Kentucky, Jimi formed "The King Casuals" with bassist Billy Cox. After being discharged due to an injury he received during a parachute jump, Jimi began working as a session guitarist under the name Jimmy James. By the end of 1965, Jimi had played with several marquee acts, including Ike and Tina Turner, Sam Cooke, the Isley Brothers, and Little Richard. Jimi parted ways with Little Richard to form his own band, "Jimmy James and the Blue Flames," shedding the role of back-line guitarist for the spotlight of lead guitar.

29.     Throughout the latter half of 1965, and into the first part of 1966, Jimi played the rounds of smaller venues throughout Greenwich Village.

### The "Jimi Hendrix Experience": September 1966 – June 1969

30.     In or about September of 1966, Jimi formed a group with drummer John Graham "Mitch" Mitchell ("Mitchell") and bassist (David) Noel Redding ("Redding"), called "The Jimi Hendrix Experience" (the "JH Experience").

31.     Jimi, Mitchell and Redding signed an exclusive recording agreement on October 11, 1966 with Producers Michael Jeffery and Bryan James "Chas" Chandler (the

---

[3] "Jimi Hendrix: The Greatest Guitarist of All Time," *Rolling Stone Magazine*, December 8, 2011; "100 Greatest Guitarists," *Rolling Stone Magazine*, December 18, 2015 (Jimi Hendrix named number one); "Jimi Hendrix Voted Greatest Guitarist of All Time," Louder, September 29, 2018 (online voter poll).

"1966 Agreement"), pursuant to which Hendrix, Redding and Mitchell granted the copyrights in the sound recordings produced thereunder, throughout the world, to Chandler and Jeffery. A copy of the 1966 Agreement is annexed hereto as Exhibit C.

32. Although in June of 1969 Redding left the band, Mitchell remained and continued to perform with Jimi and the Jimi Hendrix Experience. Jimi and Mitchell, together with Billy Cox on bass, toured as the "Jimi Hendrix Experience."

### Jimi's Death, Defendants' Estate Claims and Releases of All Claims Past and Future in Connection With the Recordings

33. Jimi died a resident of the State of New York on September 18, 1970. Proceeding for Letters of Administration commenced in *The Estate of James Marshall Hendrix a/k/a Jimi Hendrix* Index No. 5670/1970 (the "Estate Proceeding"), was granted September 25, 1970, and subsequent probate proceedings in connection with Jimi's Estate were all held in the Surrogate's Court of the State of New York, County of New York.

34. In connection with the Estate Proceeding, Redding and Mitchell filed and asserted claims in New York in connection with royalties from JH Experience Recordings.

35. Those claims were settled by signed full, broad general releases and covenants not to sue, to the Estate of Jimi Hendrix, which were executed in exchange for good and valuable consideration. The general releases extended to any recording which may be released or mastered in the future.

36. Redding signed his release on April 22, 1973 and Mitchell signed his release on September 30, 1974.[4] Both Redding and Mitchell were represented by respective New York counsel – who witnessed, approved and executed those releases.

---

[4] Copies of the releases were disclosed with the claim letter sent by Keystone Law referred to above (see Exhibits A and F, hereto).

8

37.     Redding and Mitchell accepted the settlement payments in New York through their respective attorneys, under the respective general releases.

38.     Mitchell's general release (the "Mitchell Release"), a copy of which is annexed hereto as Exhibit F, is clear and unambiguous, and included a covenant not to sue, and specifically stated, *inter alia*:

> I ... for myself, my heirs, executors and administrators, successors and assigns ...
>
> I hereby release the ESTATE OF JIMI HENDRIX, deceased, its successors and/or assigns, Are You Experienced, Ltd., its successors and assigns and any and all record companies or other entities with whom said JIMI HENDRIX, his ESTATE, or their successors and assigns may have contracted in the past, or may contract in the future ... for the distribution and sale or records embodying performances of JIMI HENDRIX on which I performed, including any soundtrack recordings from any and all liability or responsibility to account to me for or pay royalties or other compensation to me in connection with any such recordings.
>
> * * * *
>
> ... I covenant, promise and agree not to sue the ESTATE OF JIMI HENDRIX, its successors and/or assigns, Are You Experienced, Ltd., its successors and/or assigns nor any such entities or record companies for compensation arising out of the distribution of any recordings made pursuant to such contracts or agreements.
>
> * * * *
>
> By this release, I acknowledge full settlement of any compensation which I may have claimed, now claim or in the future may claim in connection with earnings on said recordings in the past, as well as any earnings which might result in the future from the sale of such recordings.
>
> * * * *
>
> This release and covenant is made by me after negotiations in which I have been represented by counsel of my choice and is made by me on the advice of counsel and is not dependent upon any facts now known nor which may hereinafter be discovered.
>
> * * * *
>
> I further agree and understand that the word "Recordings" as used herein includes discs, tape recordings, cassettes, audio visual cartridges, and any other means or modes now known and used or hereafter developed and used for the reproduction of sound and sound synchronized with visual images.

39. Redding's general release (the "Redding Release"), a copy of which is annexed hereto as Exhibit "F" is clear and unambiguous, and included a covenant not to sue and specifically stated, *inter alia*:

> I … for myself, my heirs, executors and administrators …
>
> I hereby release the Estate of JIMI HENDRIX, deceased, "ARE YOU EXPERIENCED", a corporation, the stock of which is owned by the Estate of Jimi Hendrix, deceased … and any and all other record companies throughout the world with whom JIMI HENDRIX in his lifetime, or the Estate of JIMI HENDRIX, deceased, have entered into contracts or agreements for the distribution and sale of recordings of JIMI HENDRIX on which I performed, from any and all liability or responsibility to me to account for any royalties or compensation to me in connection with said recordings. I further covenant not to sue any such record companies for compensation arising out of distribution of such recordings.
>
> By this release I acknowledge full settlement of any compensation which I may claim in connection with earnings on said recordings in the past, as well as any earnings which might result in the future, both in the United States and throughout the rest of the world.
>
> \* \* \* \*
>
> I further covenant with the Estate of JIMI HENDRIX, deceased, forever to refrain from instituting or in any way aiding any claim, demand, action or cause of action for damages, expense or compensation against the estate in connection with my performance or performances in connection with the ARE YOU EXPERIENCED group.
>
> \* \* \* \*
>
> This release goes to any recordings which may be released or mastered in the future as well as those already in release and goes to world-wide rights.

### Fifty Years of Ownership and Protection of Jimi's Copyrights

40. James Allen "Al" Hendrix was Jimi's father and sole heir to Jimi's estate. Al Hendrix founded Experience Hendrix L.L.C. and Authentic Hendrix, LLC ("the Hendrix Companies"). *See In re Estate of Hendrix*, 134 Wash. App. 1007 (2006). The Hendrix Companies are the owners and successors in interest of rights passed to Al from Jimi's estate,

including Jimi's entire body of work: musical compositions and sound recordings as well as other works, trademarks, and visual recordings, which it currently licenses throughout the world. The Hendrix Companies are also the assignees of all rights granted under the 1966 Agreement to Jeffery and Chandler.

41. The Hendrix Companies (and the Estate of Jimi Hendrix before them), now with Plaintiff SME, have been singularly committed to preserving Jimi's musical, cultural and artistic legacy. The Hendrix Companies have owned, managed, licensed and marketed Jimi's music, recordings, and artistic properties throughout the world.

42. Since their inception, the Plaintiffs have continuously enforced their copyrights, as well as all of their attendant intellectual property rights.

### The Longstanding Relationship Between the Hendrix Companies, Redding and Mitchell Until Their Deaths

43. Subsequent to Jimi's death, and after the General Releases were executed, Redding and Mitchell (before their respective deaths) collaborated with the Hendrix Companies on various enterprises and were at various times represented by counsel or other business advisors.

44. Neither Redding nor Mitchell ever asserted an ownership interest, or any other performers' rights, in the Recordings.

### THE THREATENED CLAIMS AND ACTUAL CONTROVERSY

### Defendants Seek To Resurrect Long-Settled Claims

45. On or about December 8, 2021, Plaintiffs, through their sublicensee, were sent a seven (7) page claim letter dated December 8, 2021 (the "Claim Letter") which had been sent on behalf of Defendants NRE and MME. (*See* Exhibits A – F).

11

46. Defendants NRE and MME claim to be the recent assignees of "all rights of copyright and all other rights" from each of Mitchell's and Redding's estates, five (5) months ago, in August of 2021.

47. On information and belief, these newly formed assignees were created for the purpose of, *inter alia*, soliciting a funding package to sue the Plaintiffs and/or their United Kingdom licensee exclusive licensee in connection with the underlying issues set out in the Claim Letter.

48. These entities acquired no rights greater than Redding or Mitchell had at the time of their deaths.

49. These agreements were attached to the Claim Letter, and copies are annexed hereto as Exhibits B and C.[5]

50. The Claim Letter was addressed to "Sony Music Entertainment Limited" in London.

51. The Claim Letter attaches and acknowledges the Mitchell Release and the Redding Release, but threatens litigation on the basis, *inter alia*, that these broad New York general releases and covenants not to sue are unenforceable against Defendants, noting (amongst other things) that "[n]either you [Sony] nor our clients were parties to the release agreements."

52. The Claim Letter threatens litigation on the basis, *inter alia*, that the Defendants possess copyright and other rights and interests in the Recordings, and that those rights and interests are being infringed by the Plaintiffs.

---

[5] The agreement with MME refers to certain parties effecting a legal assignment of the rights to MME but this has not been provided by Defendants' attorney.

53. The Claim Letter threatens litigation on the basis, *inter alia*, that they are owed damages estimated in the "millions of pounds" going back to 1973.

54. Since 1974, neither Defendants nor their estates have ever objected to or made any claims related to any rights in connection with the copyright or other rights or interests in the Recordings, or payments in connection with the Recordings.

## AS AND FOR A FIRST CLAIM

### Declaratory Judgment

### The Mitchell Release Is
### Valid and Enforceable Against MME

55. Plaintiffs repeat and reallege the allegations of paragraphs "1" through "54" of this Complaint, as if fully set forth herein.

56. There exists an actual controversy between the Plaintiffs and MME that lies within the jurisdiction of the Court pursuant to 28 U.S.C. §2201.

57. On September 30, 1974, Mitchell executed the Mitchell Release, in New York, which released the Estate of Jimi Hendrix, its successors and/or assigns (including any and all record companies with whom the Estate's successors or assigns may contract in future) from all claims as set forth therein in connection with any and all current and future world-wide uses of the Jimi Hendrix Experience Recordings.

58. The Mitchell Release contained a broad and comprehensive covenant not to sue the Estate of Jimi Hendrix, its successors and/or assigns.

59. Mitchell was paid and accepted good and valuable consideration in exchange for the Mitchell Release, which was acknowledged as full settlement of any compensation claimed in connection with any past or future earnings on the recordings, in whatever format they were released, sold or distributed world-wide.

60. The Mitchell Release was knowingly and voluntarily entered into, on advice from respected New York Counsel, and is clear and unambiguous on its face.

61. MME now asserts that it is not bound by the Mitchell Release, and has improperly written to Plaintiff SME's sublicensee in United Kingdom, asserting ownership in the very rights which have previously been disclaimed.

62. MME's threats of suit have created a real and reasonable apprehension of liability on the part of Plaintiffs. The threat of such suit by MME is sufficiently immediate and real as of the date of this filing, to warrant the issuance of a declaratory judgment regarding the validity and enforceability of the Mitchell Release.

63. The facts and circumstances alleged above further show that the Court can grant complete relief in this action and fully resolve the controversy between the parties. As alleged above, the Mitchell Release is valid and enforceable, and the Plaintiff Hendrix Companies are the sole owners of the copyrights, and other rights and interests in the Recordings.

64. Moreover, any claim arising from the Mitchell Release was time-barred decades ago.

65. A declaration that the Mitchell Release is valid and enforceable and encompass the suits now threatened by MME, and that that MME's claims are without legal foundation, will provide relief and terminate the insecurity that has been created by MME's claims and threats of litigation.

66. A declaratory judgment in this case would serve the useful purpose in clarifying and settling the respective rights and obligations of the parties.

## AS AND FOR A SECOND CLAIM

### Declaratory Judgment

### The Redding Release Is
### Valid and Enforceable Against NRE

67. Plaintiffs repeat and reallege the allegations of paragraphs "1" through "66" of this Complaint, as if fully set forth herein.

68. There exists an actual controversy between the Plaintiffs and NRE that lies within the jurisdiction of the Court pursuant to 28 U.S.C. §2201.

69. On April 22, 1973, Redding executed the Redding Release which released the Estate of Jimi Hendrix and any and all record companies throughout the world from all claims as set forth therein in connection with any and all current and future world-wide uses of the Jimi Hendrix Experience Recordings.

70. The Redding Release contained a broad and comprehensive covenant not to sue.

71. Redding was paid and accepted good and valuable consideration in exchange for the Redding Release, which was acknowledged as full settlement of any compensation claimed in connection with any past or future earnings on the recordings world-wide.

72. The Redding Release was knowingly and voluntarily entered into, on advice from respected New York Counsel, and is clear and unambiguous on its face.

73. NRE now asserts that it is not bound by the Redding Release, and has improperly written to Plaintiff SME's sublicensee in the United Kingdom, asserting ownership in the very rights which have previously been disclaimed.

74. NRE's threats of suit have created a real and reasonable apprehension of liability on the part of Plaintiffs. The threat of such suit by NRE is sufficiently immediate and real as of the date of this filing, to warrant the issuance of a declaratory judgment regarding the validity and enforceability of the Redding Release.

75. The facts and circumstances alleged above further show that the Court can grant complete relief in this action and fully resolve the controversy between the parties. As alleged above, the Redding Release is valid and enforceable, and the Plaintiff Hendrix Companies are the sole owners of the copyrights, and all other rights and interests in the Recordings.

76. Moreover, any claim arising from the Redding Release was time-barred decades ago.

77. A declaration that the Redding Release is valid and enforceable and encompass the suits now threatened by NRE, and that NRE's claims are without legal foundation, will provide relief and terminate the insecurity that has been created by NRE's claims and threats of litigation.

78. A declaratory judgment in this case would serve the useful purpose in clarifying and settling the respective rights and obligations of the parties.

## AS AND FOR A THIRD CLAIM

### Declaratory Judgment of Non-Infringement
### Against All Defendants

79. Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" through "78" of this Complaint as fully set forth herein.

80. The facts and circumstances alleged above show that Defendants have claimed that Plaintiffs and their sublicensees are liable for copyright and other intellectual property rights infringement based upon their uses and exploitations of the same over the past 48 years. In the Claim Letter, Defendants have threatened to pursue these claims against Plaintiffs and its licensees.

81. Defendants' threats of suit have created a real and reasonable apprehension of liability on the part of Plaintiffs. The threat of such suit by Defendants is sufficiently immediate and real as of the date of this filing, to warrant the issuance of a declaratory judgment of ownership and non-infringement.

82. The facts and circumstances alleged above further show that the Court can grant complete relief in this action and fully resolve the controversy between the parties. As alleged above, the General Releases are valid and enforceable, and the Court can therefore decide that any and all exploitation of the Recordings by Plaintiffs is not a copyright infringement or any infringement of any other rights or interests.

83. A declaration that the Defendants' claims are without legal foundation, and that the Plaintiffs' and their licensees are not infringing any copyrights [or other rights or

interests] of the Defendants will provide relief and terminate the insecurity that has been created by Defendants' claims and threats of infringement.

84. Moreover, any claim of ownership by the Defendants was time barred decades ago.

85. A declaratory judgment in this case would serve the useful purpose in clarifying and settling the respective rights and obligations of the parties.

86. The facts and circumstances alleged above thus establish that the Court has jurisdiction to issue a declaratory judgment of non-infringement in this action.

**WHEREFORE,** Plaintiffs demand judgment in their favor as follows:

A. On the First Cause of Action, a declaration that the Mitchell Release is a valid and enforceable document.

B. On the Second Cause of Action, a declaration that the Redding Release is a valid and enforceable document.

C. On the Third Cause of Action:

i. a declaration that the Plaintiffs, by virtue of the Mitchell Release and the Redding Release, do not infringe any copyright or other rights or interests, nor are the Defendants entitled to any royalty income under United States copyright law, the laws of the United Kingdom or similar rights anywhere in the world in connection with the Recordings;

ii. a declaration that the Hendrix Companies, and not the Defendants, are entitled to quiet title to the exploitation of the Recordings; and

        iii.    an order restraining and enjoining Defendants from claiming any rights of ownership or intellectual property rights of whatsoever nature world-wide in the Recordings or any portion thereof, including copyright claims.

D.    That the Defendants be required to pay to the Plaintiffs the costs and disbursements for maintaining this action, including reasonable attorney's fees including under 17 U.S.C. § 505; and

E.    That Plaintiffs have such other and further relief as to this Court may seem just and proper together with the costs of this action.

Dated:    New York, New York
             January 18, 2022

HERBSMAN HAFER WEBER & FRISCH, LLP

By: _____
Dorothy M. Weber (DMW-4734)
494 Eighth Avenue, Suite 600
New York, NY 10001
(212) 245-4580
dorothy@musiclaw.com
*Attorneys for Plaintiffs Experience Hendrix L.L.C., Authentic Hendrix LLC and Sony Music Entertainment*