# Exhibit B

# ANNEX 1

# gunner*cooke*

**DATED**

**26 August 2021**

**AGREEMENT MADE AS A DEED ON 26 AUGUST 2021**

**PARTIES**

(1) **Aysha Mitchell** of 146 NE Riddell Road, Bremerton, WA, 98310-2515, USA ("**AM**"); and

(2) **Nicholas Hall** of Gunner Cooke LLP 1 Cornhill, London, EC3V 3ND ("**NH**") as Personal Representative of the estate of **John Graham Mitchell** under Letters of Administration dated 26th May 2021; and

(3) **Mitch Mitchell Estate Ltd** company number 13138694 of Office 52, 15 Ingestre Place, Soho, London W1F 0DU England ("**MME**")

Whereas:

(A) AM is the sole beneficiary of the Estate of John Graham Mitchell deceased (hereafter also referred to as the "ME").

(B) The ME including but not limited to all intellectual property rights and various other related interests, rights and choses in action is currently under the administration of NH who is required to act in the best interests of AM.

(C) MME has been formed so that it may obtain a funding package from a regulated Third-Party Funder (TPF) to meet all the costs including, but not limited to, solicitors' fees, barristers' fees, broker's fees, expert reports, insurance and any other pre-agreed advances or legal costs and including the right to bring, make, oppose, defend, and prosecute proceedings, claims or actions (including appeals in respect of the same) and obtain relief (and to retain any damages or other monetary relief recovered) in respect of any infringement, or any other cause of action arising from ME's ownership, of any and all intellectual property assets, rights, title, interest and benefits whether occurring before, on, or after the date of this agreement (**the "Proposed Intellectual Property Claims"**).

(D) AM has agreed to legally, beneficially (if and so far as necessary), and absolutely assign to MME with full title guarantee all the copyright interests and various other rights and interests in the ME with effect from the date of this agreement and by effecting a separate legal assignment.

(E) NH as administrator of the ME has agreed to join in the assignment as co-assignor to ensure that it is fully effective

**1.  Agreement**

1.1 This agreement is conditional upon AM and NH legally assigning the rights set out in Recital D above. Upon effecting the legal assignment, this agreement sets out the basis on which MME will bring the Proposed Intellectual Property Claims and as necessary pursue and regulate the various copyright and other rights and interests of the ME.

1.2     MME as legal assignee will be responsible for organising and paying for all processes which are required to bring the proposed Intellectual Property Claims.

1.3     MME as legal assignee will have the right to initiate audit investigations of various copyright collection societies and/or music labels that have historically collected or exploited the rights of the ME.

1.4     MME as legal assignee will collect all revenues and account directly to AM (with NH's consent) as per section 2 below.

1.5     AM will not be required to contribute to the costs incurred in 1.2-1.4 above which shall be borne by MME.

1.6     The consideration for the legal assignment as referred to at Recital (D) above will be the share of profits set out in section 2.4 below.

**2 Accounting and Profit Share**

2.1     MME will keep auditable books and records, which contain complete accountings of all costs and revenues in relation to the above.

2.2     Revenues include (but are not limited to), current, future, and historic royalties, license advances, settlement/compromise payments in relation to the Proposed Intellectual Property Claims, any awards in the English or American courts or elsewhere in the world, including any court awarded damages.

2.3     Costs include (but are not limited to), all disbursements incurred by MME and solicitors' fees, barristers' fees, broker's fees, expert reports, insurance and any other pre-agreed advances or legal costs payments to third parties and whose services are related to 1.2, 1.3, 1.4, above

2.4     In so far as revenues exceed costs any surplus will be distributed as follows:

50% to MME or as it so directs and 50% to AM or as she or her successors, and assigns may direct, for the life of copyright interests that are legally assigned to MME.

2.5     MME will produce and provide to AM detailed revenue and cost reports every year within 60 days of year-end.

**3      Accounting/Audits**

3.1     All accounting statements rendered by MME to AM shall be binding and not subject to any objection for any reason unless specific objection is made, in writing to MME, stating the basis for any objections within one (1) year from the date any accounting statement is rendered.

3.2     To check the accuracy of MME's accountings, AM or her authorised representative, may, at her own expense, engage a certified public accountant to inspect MME's books and records relating to MME's accounts, during normal business hours in the place where MME's records are normally kept.

AM must provide MME with at least 30 days notice of her intent to inspect its financial books and records.

**4    Confidentiality**

Neither party shall disclose reveal or make public (except to their joint or respective professional advisers under a similar obligation of confidentiality) at any time any information whatsoever concerning the business or affairs of either party or relating to this Agreement all of which shall be strictly confidential.

**5.    Entire Agreement**

This Agreement constitutes the whole agreement between the parties and supersedes all previous agreements between the parties relating to its subject matter.

**6.    Variation**

No variation of this Agreement shall be effective unless it is in writing by the parties (or their authorised representatives) and is either supported by valuable consideration of itself executed as a deed or specialty agreement.

**7.    Severance**

7.1    If any court or competent authority finds that any provision of this Agreement (or part of any provision) is invalid, illegal or unenforceable, that provision or part-provision shall, to the extent required, be deemed to be deleted, and the validity and enforceability of the other provisions of this Agreement shall not be affected.

7.2    If any invalid, unenforceable or illegal provision of this Agreement would be valid, enforceable and legal if some part of it were deleted, the provision shall apply with the minimum modification necessary to make it legal, valid and enforceable.

**8    Counterparts**

This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this Agreement, but all the counterparts shall together constitute the same Agreement. No counterpart shall be effective until each party has executed at least one counterpart.

**9.    Third party rights**

No person other than a party to this Agreement shall have any rights to enforce any term of this Agreement.

**10. Notices**

10.1.   Any notice or other communication required to be given under this agreement shall be in writing by pre-paid first-class post or recorded delivery or by commercial courier, to each party required to receive the notice or communication as set out below:

10.2   Any notice or other communication shall be deemed to have been duly received if sent to:

AM: 146 NE Riddell Road, Bremerton, WA, 98310-2515, USA

NH: Gunnercooke LLP 1 Cornhill, London, EC3V 3ND

MME: Office 52, 15 Ingestre Place, Soho, London W1F 0DU

10.3   The provisions of this clause shall not apply to the service of any proceedings or other documents in any legal action.

**11   Governing Law and Jurisdiction**

11.1   This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by, and construed in accordance with, the law of England and Wales.

11.2   The parties irrevocably agree that the courts of England and Wales shall have exclusive jurisdiction to settle any dispute or claim that arises out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims).

SIGNED as a deed by:                                                )
**Aysha Mitchell**

In the presence of:      Maj Keith T. Simon USMC (ReA

Name                     Keith T. Simon

Address                  57 D Princeton Ave,
                         Hopewell, NJ 08525

SIGNED as a deed by:
**Nicholas Hall**

In the presence of:

Name. LYNNE HALL

Address          19 Solisbury Road
                 Leigh on Sea
                 Essex
                 SS9 2JX.

Signed as a deed for and on behalf of
the Mitch Mitchell Estate Limited by Edward Adams
as sole director of the Mitch Mitchell Estate Limited

**Mitch Mitchell Estate Ltd**

In the presence of:

Name NATALIE VINES

Address   THE BROWNLOW
          IVINGHOE BEDS LU79DY
          ENGLAND

# gunner*cooke*

**DATED**

**August 2021**

**DEED OF ASSIGNMENT AND VARIATION**

This deed is dated    August 2021

**Parties**

(1)     Noel Redding's Experience LLC incorporated and registered with the California Secretary of State on May 18, 2015 with company number 201514110268 whose registered office is at 4000 Old Rancheria Road, Nicasio, California 94946 **(Assignor)**

(2)     Noel Redding Estate Limited incorporated and registered in England and Wales with company number 6434124 whose registered office is at Office 52, 15 Ingestre Place, London W1F 0DU **(Assignee)**

Together referred to as the **Parties**

**Background**

(A)     The Parties are party to a deed of assignment dated April 2020 **(The Contract)**.

(B)     The Parties have agreed to vary certain clauses in the Contract.

(C)     By virtue of an assignment dated 14 July 2021 and other instruments recited therein, the Assignor is the legal, beneficial and absolute owner of all the assets of, and any and all rights, title, interest, and benefits in, the Estate of Noel Redding deceased (excluding certain publishing royalties), including but not limited to all intellectual property rights and various other related interests, rights and choses in action  as there set out, including in particular those arising from or howsoever related or connected to the Works and Materials as set out in Schedule 2 of the Contract (as hereby amended).

(D)     The Assignor has agreed to legally, beneficially (if and so far as necessary), and absolutely assign to the Assignee with full title guarantee all of the said assets, rights, title, interest, and benefits, including but not limited to all intellectual property rights and other related interests, rights and choses in action, which arise from or are howsoever related or connected to the said Works and Materials on the terms of this deed with effect from the date of this deed **(Effective Date)**.

**Agreed terms**

**1.      Variation of the Contract**

With effect from the Effective Date the Parties agree the following variations to the Contract:

a) Clause number 1.1: The definition of **Funding Package** is amended to read as follows: **"**A funding package is a contract with a regulated Third-Party Funder (TPF) to meet all the costs of meeting the third party costs of the assignee as claimant

outlined in (E) above to include, but not be limited to, solicitors' fees, barristers' fees, funding broker's fees, expert reports, Insurance and any pre-agreed advances or related legal costs".

b) The opening words of Clause 2.1 are amended as follows: The deletion of the word 'limited' and the substitution of the word 'full', so that they read: "For a consideration of $10,000 (ten thousand US dollars) the Assignor hereby assigns to the Assignee absolutely with full title guarantee the following rights throughout the world...."

c) Clause 2.2 is deleted.

d) Clause 2.4 is amended as follows: "The assignor retains the physical masters to the musical recordings of non-Jimi Hendrix Experience materials, including the unreleased album "Nervous Breakdown", and all audio tapes, and all other materials to include but not be limited to such as items as memorabilia, letters, diaries, guitars, video-cassettes, associated advance and royalties, from television or film rights, book rights, associated revenues from merchandising and images and royalties from Noel Redding's own music.

e) Clause 2.5 is amended by the insertion of the word "publishing" immediately before "royalty payments".

f) Clause 2.6 is deleted together with Schedule 4 to which it refers.

g) Clause 4.2 is amended by the insertion of the words "Subject to clause 5" at the beginning of the clause and an extra sentence at the end: "NRE to have the final say."

h) Clause 5 is amended as follows: "Any settlement negotiations will be conducted in accordance with clause 4.2 above."

i) Clause 7.8 is amended as follows: "There are no facts or circumstances in relation to its rights which have not been fully disclosed in writing to the Assignee and which if disclosed might have been expected to affect the decision of the Assignee to enter into this assignment."

j) Clause 9 is deleted.

k) The second sentence of Clause 10.1 is amended as follows: "...., in particular following death or loss of capacity of a principal, and shall inure to the benefit of the Assignor or Assignee as the case may be, and their respective successors and assigns; provided, however ....".

l) In the second line of Schedule 1 paragraph 2, "... NRR receives ..." is corrected so as to read "... NNR receives...".

3

m) Schedule 1 paragraph 5(a) is amended by the insertion after "Lowecha LLC" of the additional words "(of which he became sole member)".

n) The opening words of Schedule 1, paragraph 5(b) are amended as follows: The deletion of the word 'retain' and the substitution of the words 'have contractual', so that they read: "The sisters have contractual rights to a portion …."

o) Schedule 1 paragraph 5(c) is amended as follows: "Ownership of the physical masters to the musical recordings of non-Jimi Hendrix Experience materials, including the unreleased album "Nervous Breakdown", and all audio tapes, and all other materials to include but not be limited to such as items as memorabilia, letters, diaries, guitars, video-cassettes which at this time becomes exclusively owned by GP and GP has full possession of such property.  As per clause 2.4 these do not form part of this Deed."

p) Schedule 1 is amended to include a new clause 6 as follows: "On 14 July 2021, the sisters, NRE, Lowecha LLC and GP entered into a Deed of Assignment and Variation. In this agreement, the sisters legally, beneficially (if and so far as necessary), and absolutely assigned to NRE all the assets of, and any and all of their rights, title, interest, and benefits in, the Estate of Noel Redding deceased (excluding certain publishing royalties) with effect from the Effective Date including, but not limited to all intellectual property rights and the right to bring, make, oppose, defend, and prosecute proceedings, claims or actions (including appeals in respect of the same) and obtain relief (and to retain any damages or other monetary relief recovered) in respect of any infringement, or any other cause of action arising from ownership, of any and all such assets, rights, title, interest and benefits whether occurring before, on, or after the Effective Date.

q) Schedule 2 is amended to include, in addition to those Works and Materials already there listed, those set out in Schedule 1 to this deed.

## 2.   Effect of Variation to the Contract

Except as set out in 1, the Contract shall continue in full force and effect.

## 3.   Assignment

The Assignor hereby legally, beneficially (if and so far as necessary), and absolutely assigns all the assets of the Estate of Noel Redding deceased (excluding certain publishing royalties), and any and all of its rights, title, interest, and benefits in the said Estate and assets, which arise from or are howsoever related or connected to the Works and Materials as set out in Schedule 2 of the Contract (as hereby amended) to the Assignee with full title guarantee with effect from the Effective Date, including, but not limited to, all intellectual property rights and the right to bring, make, oppose, defend,

and prosecute proceedings, claims or actions (including appeals in respect of the same) and obtain relief (and to retain any damages or other monetary relief recovered) in respect of any infringement, or any other cause of action arising from ownership, of any and all such assets, rights, title, interest and benefits whether occurring before, on, or after the Effective Date.

## 4.   Further assurance

Each party shall, and shall use all reasonable endeavours to procure that any necessary third party shall, execute and deliver such documents and perform such acts as may reasonably be required to give full effect to this deed.

## 5.   Governing law

This deed and any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with it or its subject matter or formation shall be governed by and construed in accordance with the law of England and Wales.

## 6.   Jurisdiction

Each party irrevocably agrees that the courts of England and Wales shall have exclusive jurisdiction to settle any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with this deed or its subject matter or formation.

This document has been executed as a deed and is delivered and takes effect on the date stated at the beginning of it.

Executed as a deed by Guy Phillips

for and on behalf of Noel Redding's                     ……………………………

Experience LLC


In the presence of [name of witness]                    ……………………………

Address                                                  ……………………………

                                                         ……………………………

                                                         ……………………………

Occupation of witness                                    ……………………………

Executed as a deed by Edward Adams

for and on behalf of NRE Limited                         ……………………………

5

Each party irrevocably agrees that the courts of England and Wales shall have exclusive jurisdiction to settle any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with this deed or its subject matter or formation.

This document has been executed as a deed and is delivered and takes effect on the date stated at the beginning of it.

Executed as a deed by Guy Phillips

for and on behalf of Noel Redding's

Experience LLC

In the presence of [name of witness]

Address

Occupation of witness

Executed as a deed by Edward Adams

for and on behalf of NRE Limited

In the presence of [name of witness]

Address

Occupation of witness

**Schedule 1 (as amended)**

**Work and Materials**

**ARE YOU EXPERIENCED?**

"Are you experienced?"

*"Foxy Lady"*

*"Manic Depression"*

*"Red House"*

"Can You See Me"

"Love or Confusion"

*"I Don't Live Today"*

*"May This Be Love"*

*"Fire"*

*"3rd Stone from the Sun"*

"Remember"


**AXIS: BOLD AS LOVE**

"EXP"

*"Up from the Skies"*

*"Spanish Castle Magic"*

*"Wait Until Tomorrow"*

"Ain't No Telling"

*"Little Wing"*

*"If Six Was Nine"*

"You've Got Me Floating"

*"Castles Made of Sand"*

*"She's So Fine" (Noel Redding)*

*"One Rainy Wish"*

"Little Miss Lover"

*"Bold as Love"*


**ELECTRIC LADYLAND**

"...And the Gods Made Love"

*"Have You Ever Been (To Electric Ladyland)"*

*"Crosstown Traffic"*

*"Voodoo Chile"*

*"Little Miss Strange" (Noel Redding)*

"Long Hot Summer Night"

"Come On (Part 1)"

*"Gypsy Eyes"*

*"Burning of the Midnight Lamp"*

"Rainy Day, Dream Away"

*"1983... (A Merman I Should Turn to Be)"*

"Moon, Turn the Tides....Gently Gently Away"

"Still Raining, Still Dreaming"

"House Burning Down"

"All Along the Watchtower" (Bob Dylan)

*"Voodoo Child (Slight Return)"*

***SMASH HITS***

*Purple Haze*

*Fire*

*The Wind Cries Mary*

*Can You See Me?*

*51st Anniversary*

*Hey Joe*

*Stone Free*

*The Stars That Play With Laughing Sam's Dice*

*Manic Depression*

*Highway Chile*

*The Burning of the Midnight Lamp*

*Foxy Lady*